IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| NIYA S. WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 9:19-cv-0730-DCN |
| vs. | ) |
| | ) **Order** |
| YAMAHA MOTORS CORP., U.S.A., | ) |
| | ) |
| Defendant. | ) |

The following matter is before the court on defendant Yamaha Motors Corp., U.S.A.'s ("Yamaha") motion to dismiss for lack of personal jurisdiction, ECF No. 4. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This products liability action arose from a car accident in Daytona Beach, Florida. On March 26, 2016, plaintiff Niya S. Wallace ("Wallace") was driving a Yamaha YZF R6 motorcycle[1] when she was allegedly struck from the rear by a Nissan sedan driven by Debra J. Clark, who is not a party to this action. Wallace was ejected from the motorcycle, and she alleges that the fuel tank also separated from the motorcycle upon impact. Wallace further alleges that the Nissan sedan continued forward, dragging her and the motorcycle a short distance when the motorcycle "burst into flames and continued to burn until after the vehicles came to rest" a short time later. ECF No. 1-1 at ¶ 12. Wallace suffered severe burns as a result of exposure to the flames.

---

[1] The subject motorcycle was not owned by Wallace but by Jonathan Shuler, also a South Carolina resident.

1

On February 1, 2019, Wallace filed this action in the Hampton County Court of Common Pleas, asserting claims for negligence, breach of warranty, and strict liability on a defective design theory based on the motorcycle's alleged uncrashworthiness. ECF No. 1-1. On March 11, 2019, Yamaha removed the case to the district court on the basis of diversity jurisdiction. ECF No. 1. The next day, Yamaha filed the instant motion to dismiss based on a lack of personal jurisdiction. ECF No. 4. On June 4, 2019, the court granted Wallace's motion to conduct jurisdictional discovery and stayed the deadline for Wallace to respond to Yamaha's motion to dismiss. ECF No. 21. On September 10, 2019, Wallace responded to the motion to dismiss, ECF No. 26, to which Yamaha replied on September 17, 2019, ECF No. 27. On September 29, Wallace filed a motion for leave to file sur-reply, ECF No. 29, which this court granted, ECF No. 32. Yamaha responded to Wallace's sur-reply, ECF No. 33. On November 1, 2019, the court held a hearing on the motion. As such, this matter is ripe for the court's review.

## II. STANDARD

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex Corp., 124 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit

conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

## III. DISCUSSION

Yamaha contends that the court cannot exercise personal jurisdiction over it. The parties agree that Yamaha's contacts with South Carolina, while extensive, are insufficient to subject Yamaha to general personal jurisdiction in the state.[2] Instead, Wallace contends that the court can exercise specific jurisdiction over Yamaha based on Yamaha's suit-related contacts with the forum state. Consequently, resolution of the instant motion requires an analysis of the court's ability to exercise specific jurisdiction over Yamaha under South Carolina's long-arm statute and in consideration of Yamaha's protections under the Due Process Clause of the Constitution. For the reasons discussed below, the court does not have specific jurisdiction over Yamaha.

In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize

---

[2] "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Subject only to narrow exception, corporate defendants are "essentially at home" in the states under the laws of which they were incorporated and in which they have their principal place of business. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). Yamaha is a California corporation with its principal place of business in Cypress, California. Thus, it is clear Yamaha is not subject to general jurisdiction in South Carolina.

3

jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court is whether the exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F.Supp.2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945). Due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. See id. at 292.

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction:

(1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)). To show that an exercise of specific jurisdiction over a defendant comports with due process, a plaintiff "must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

The Supreme Court has made clear that the second prong of the test for specific jurisdiction—the "arises out of" requirement—is a necessary element, not a factor that leaves room for discretion: "In order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017) (quoting and citing Daimler, 571 U.S. at 117; Burger King, 471 U.S. at 472–473; Helicopteros, 466 U.S. at 414) (internal quotation marks omitted) (emphasis added). "When there is no such connection [between the plaintiffs' claims and the defendant's contacts with the forum], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Bristol-Myers, 137 S. Ct. at 1781. Further, claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quoting Burger King, 471 U.S. at 475) (emphasis added). In other words,

5

conduct of plaintiffs or third parties that creates a connection between the defendant and the forum state will be disregarded.

Wallace points to a deluge of evidence that shows the number and extent of Yamaha's contacts with South Carolina to justify the court's exercise of specific jurisdiction under the first and third prongs of the test. In response to the motion to dismiss, Wallace provides extensive details of those contacts, including the existence of 106 authorized Yamaha dealerships within the state, the extent of control Yamaha wields over those dealerships, Yamaha's membership in the state Chamber of Commerce, Yamaha's property in South Carolina, and its marketing and advertising efforts aimed at the state. To be sure, the court is more than convinced that Yamaha's extensive activities in South Carolina satisfy the first and third prongs of the test for specific jurisdiction. However, the court's inquiry does not end there.

For this court to exercise specific jurisdiction over Yamaha, Wallace must show that her claims arise from or relate to some specific, purposefully availing activity that Yamaha conducts in South Carolina. Wallace argues that "Yamaha is subject to specific jurisdiction based on its extensive South Carolina contacts." ECF No. 26 at 7. The number and extent of Yamaha's contacts with South Carolina, however, does nothing to change the Bristol-Myers requirement that Wallace's claims must arise out of or relate to Yamaha's contacts with the forum state. Under this inquiry, the extent or pervasiveness of a defendant's contacts is immaterial; instead, it is the character of the defendant's contacts that counts.

Yamaha argues that Wallace's claims do not arise from its contacts with South Carolina. Wallace asserts products liability claims based on her accident while riding a

Yamaha YZF R6 motorcycle (the "subject motorcycle"). In support of its argument, Yamaha has presented the following uncontested facts. Yamaha is a California corporation with its principal place of business in Cypress, California. The subject motorcycle was designed and manufactured in Japan by Yamaha Motor Corporation. Yamaha Motor Corporation sold the subject motorcycle to Yamaha, who then distributed the subject motorcycle to Brooks Yamaha Inc. in Kansas. The subject motorcycle was purchased in Kansas by a consumer. Through the actions of third parties, the motorcycle was brought into South Carolina. Wallace's accident occurred in Florida. Therefore, Yamaha has presented facts that demonstrate the absence of a connection between Wallace's claims and its contacts with South Carolina.

Wallace has advanced two theories to satisfy the "arises out of" requirement. First, Wallace argues that "Yamaha marketed, distributed, and sold the motorcycle model Plaintiff alleges is defective in the State of South Carolina." ECF No. 26 at 14. The Supreme Court rejected this theory of relatedness in <u>Bristol Myers</u>. There, the defendant sold and marketed a prescription drug in California. The plaintiffs, who were injured by the drug, sued the defendants in California. The Supreme Court dismissed from the case the plaintiffs who did not purchase the drug or experience injury in California, holding that their claims did not arise from or relate to the defendant's contacts in California. <u>Bristol Myers</u>, 137 S. Ct. at 1775 ("Although [the defendant] engages in business activities in California and sells Plavix there, [it] did not develop, create a marketing strategy for, manufacture, label, package, or work on the regulatory approval for Plavix in the state . . ."). The Supreme Court found insufficient the connection between the

defendant's activities in California and the claims of the non-California plaintiffs, despite the defendant marketing the very product that injured the plaintiffs in California. Id.

Likewise, Yamaha's sale, warranty, and service of motorcycles that were not involved in Wallace's accident do not provide a connection to Wallace's claims. Like the Bristol Myers plaintiffs, Wallace must show something more than a general connection between Yamaha's contacts with South Carolina and her claims. Wallace has presented no evidence that shows that Yamaha manufactured or designed the YZF R6 motorcycle in South Carolina. Moreover, evidence that shows that Yamaha sold, serviced, warranted, or derived income from specific motorcycles of that make and model does nothing to connect Wallace's claims to this state. The fact that Yamaha sells or markets the same type of motorcycle as the one involved in Wallace's accident in South Carolina is not a connection between Wallace's claims and Yamaha's contacts that might support specific jurisdiction. See Goodyear, 564 U.S. at 931 n. 6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). To hold otherwise would be to subject every defendant to specific jurisdiction in every forum where it sells and markets a product for claims involving a different product of the same model.

The overwhelming case law demands this conclusion. See, e.g., Irvin v. Southern Snow Mfg., Inc., 517 F. App'x 229, 232 (5th Cir. 2013) (finding no jurisdiction in Mississippi where Louisiana defendant sold snowball machine to Louisiana customer in Louisiana and Plaintiff unilaterally transported machine into Mississippi and suffered injury in Mississippi); Kommer v. Ford Motor Co., 2019 WL 2895384, at *3 (N.D.N.Y. June 19, 2019) (finding no specific jurisdiction over defendant in New York where

plaintiffs purchased defendant's trucks in Ohio, Indiana, and Pennsylvania); Sullivan v. Ford Motor Co., 2016 WL 6520174, at *3 (N.D. Cal. Nov. 3, 2016) (finding that the plaintiff's claim did not arise from defendant's contacts with California where his vehicle was manufactured in Kentucky and sold by defendant to a Minnesota dealership); Pitts v. Ford Motor Co., 127 F. Supp. 3d 676, 686 (S.D. Miss. 2015) (finding that plaintiffs' claims did not arise out of defendant's contacts with the forum state where the plaintiff purchased the vehicle in a different forum and subsequently transported it to the forum state). These cases are analogous to this case in their facts and legal analysis. The court finds that Wallace's claims do not arise from or relate to Yamaha's contacts in South Carolina.

Second, Wallace relies Holliday v. Nissan Motor Co. to satisfy the "arises out of" requirement. 2019 WL 2612771, at *10–11 (D.S.C. June 26, 2019). This reliance is misplaced. In Holliday, the defendant was a component-part manufacturer, and the court used "stream-of-commerce" law to exercise specific jurisdiction over it. Under the "stream-of-commerce plus" test, which applies to the exercise of specific jurisdiction over component-part manufacturers and distributors, a non-resident defendant may be subject to specific jurisdiction in a given forum where it places a product in the stream of commerce, that product reaches the forum state "through the stream of commerce," and the defendant engaged in some additional conduct that showed an intent to serve the market in that forum state. Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 112 (1987). Wallace seeks to apply this test to the instant case but ignores a necessary condition precedent.

Stream of commerce jurisprudence concerns the placement of a good into the stream of commerce by a component-part manufacturer or distributor before the finished product reaches a retailer, and ultimately, a consumer in the forum state. As the Supreme Court noted in J. McIntyre, "[stream of commerce] refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011). What does seem clear, however, is that the stream of commerce discussion ends when a retailer makes a sale to a consumer in a forum state. "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." Asahi, 480 U.S. 102 at 117 (J. Brennan, concurring) (emphasis added). Thus, while the 'stream-of-commerce' test applies to distributors and manufacturers whose goods reach the forum state "through the stream of commerce", it does not apply to distributors or manufacturers whose goods reach one state through the stream of commerce, are purchased by a consumer and subsequently taken into another state. See Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("A prerequisite to the application of the stream of commerce theory is that defendant's product actually be sold, directly or indirectly, in the forum state.").

The purpose of the stream-of-commerce doctrine is to hold manufacturers and distributors of goods accountable for defective goods sold within the forum state. Without it, distributors and manufacturers would be able to hide behind retailers in the forum and avoid jurisdiction. When a distributor distributes a good that is sold outside of the forum state, however, the doctrine is simply inapplicable to the exercise of specific

jurisdiction. In other words, stream of commerce doctrine does not apply to distributors who distribute products into one forum where they are sold and taken into a different forum. It would make little sense to apply the Bristol Myers holding to the sellers of goods but not to upstream distributors and manufacturers. Bristol Myers held that the defendant-seller, who had extensive contacts with California, was not subject to specific jurisdictions for claims that arose from products sold outside the state. 137 S. Ct. at 1775. Under Wallace's theory, the Bristol Myers court would have found that the same contacts that were insufficient to subject the retailer of the product to specific jurisdiction in California would be sufficient to subject an upstream manufacturer or distributor of the same product to specific jurisdiction there. Such an illogical result does not reflect the Supreme Court's holding. The stream-of-commerce doctrine is not a tool by which a plaintiff may circumvent the Fourth Circuit's "arises from or relates to" requirement for specific jurisdiction.

Although the Fourth Circuit has not confronted this exact issue, the Fifth Circuit has explicitly stated: "Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 273 (5th Cir. 2006); see also Irvin, 517 F. App'x at 232 (finding stream of commerce analysis inapplicable where the plaintiff purchased machinery from the defendant outside of the forum and was subsequently injured by the machinery within the forum).

This conclusion follows logically from the requirement, discussed above, that a defendant's contacts with a forum for the purposes of personal jurisdiction must be

purposefully made by him, not by the plaintiff or third parties. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen, 444 U.S. 286, 298 (1980) (citing Hanson, 357 U.S. at 253). The "defendant's conduct [] must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Walden, 571 U.S. 277 at 285. In short, stream-of-commerce analysis is irrelevant to the case at hand because the motorcycle did not reach the forum state through the "stream of commerce"; it was transported there after its purchase in a different forum.

      Specific jurisdiction and general jurisdiction are two divergent avenues to personal jurisdiction. Analysis into each require distinct inquires, and a plaintiff's near-showing on one has no effect on the other. Wallace attempts to conflate the two as notches on a sliding scale, arguing that the extent and pervasiveness of Yamaha's contacts fall just short of the threshold for general jurisdiction but must subject it to specific jurisdiction. The Supreme Court, however, has made the distinction clear and has cautioned against perverting specific jurisdiction into "a loose and spurious form of general jurisdiction." Bristol-Myers Squibb, 137 S. Ct. at 1776. Because Wallace cannot show that her claims arise out of or relate to Yamaha's contacts with South Carolina, the court is without the authority to exercise specific personal jurisdiction over Yamaha. Thus, Wallace's claims against Yamaha must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** the motion to dismiss without prejudice.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 20, 2019**
**Charleston, South Carolina**